Salvatore G. Gangemi (SG 6769)
GANGEMI LAW FIRM, P.C.
82 Wall Street, Suite 300
New York, New York 10005
212-425-0630
212-425-1421 Facsimile
Attorneys for Plaintiff

'08 CIV 4193

RECEIVED
MAY 01 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

08 Civ. _____

---------------------------------------------------------------x

KENNETH WOOD,

                         **Plaintiff,**

          v.

PITNEY BOWES, INC.,

                        **Defendant.**

**COMPLAINT**
**AND JURY TRIAL DEMAND**

---------------------------------------------------------------x

       Plaintiff, Kenneth Wood, as and for his Complaint and Jury Trial Demand, by his attorneys, Gangemi Law Firm, P.C. alleges as follows:

**NATURE OF ACTION**

       1.     This is an action to remedy violations of the rights of Plaintiff arising under The Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. 12101 *et seq.* (hereinafter "ADA"); The Civil Rights Act of 1991; the New York State Human Rights Law, McKinney's Executive Law §§ 290, *et seq.* (hereinafter "NYSHRL"); and the New York City Human Rights Law, Administrative Code of the City of New York, §§ 8-101, *et seq.* (hereinafter "NYCHRL")

       2.     Plaintiff seeks relief pursuant to the aforementioned statutes, which prohibit, *inter alia*, disability discrimination, including disability harassment, in employment, as well as retaliation for opposing discriminatory practices or engaging in protected activity.

0440.00111666

## JURISDICTION AND VENUE

3.      This action arises under the laws of the United States.  Jurisdiction is vested in this court pursuant to 28 U.S.C. §§ 1331, 1343(4), 42 U.S.C. § 12117(a), and 42 U.S.C. § 2000e-5(f)(3), conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief.

4.      The Court's supplemental jurisdiction of claims arising under the laws of New York State and New York City is invoked under 28 U.S.C. § 1367.

5.      Venue herein is proper under 28 U.S.C. § 1391(b), 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3), as some of the acts complained of occurred within the Southern District of New York, and that is also the location in which employment records are maintained and administered.

## PARTIES

6.      Plaintiff, Wood, is a male who resides in the State of New York, Nassau County.

7.      At all times material hereto, plaintiff was a "qualified individual with a disability," within the meaning of the ADA, and protected from discrimination in employment on the basis of disability and from retaliation for opposing discriminatory practices or otherwise engaging in protected activity.

8.      At all times material hereto, Plaintiff suffered from a "disability" as that term is defined in the ADA.

9.      Plaintiff was at all times material hereto an "individual" within the meaning of the NYSHRL.

10.     At all times material hereto, Plaintiff suffered from a "disability" as that term is defined in the NYSHRL.

0440.00111666

11.     Plaintiff was at all times material hereto a "person" within the meaning of the NYCHRL.

12.     At all times material hereto, Plaintiff suffered from a "disability" as that term is defined in the NYCHRL.

13.     Upon information and belief, Defendant, Pitney Bowes, Inc., is a corporation incorporated under the laws of the State of Delaware, with its headquarters in Connecticut. Defendant is doing business in New York State, and is capable of being sued.

14.     Upon information and belief, Defendant maintains offices in New York City, including its human resources department responsible in whole or in part for administering the terms and conditions of Plaintiff's employment.

15.     Upon information and belief, defendant is in the business of manufacturing, selling and servicing various office products, including mailing machines, mailing meters, shipping systems and scales.

16.     At all times material hereto, Defendant was an "employer" within the meaning of the ADA and as such was prohibited from discriminating on the basis of disability, and from retaliating against an employee for opposing discriminatory practices or otherwise engaging in protected activity.

17.     At all times material hereto, Defendant was an "employer" within the meaning of the NYSHRL and as such was prohibited from discriminating on the basis of disability, and from retaliating against an employee for opposing discriminatory practices or otherwise engaging in protected activity.

18.     At all times material hereto, Defendant was an "employer" within the meaning of the NYCHRL and as such was prohibited from discriminating on the basis of disability, and from

0440.00111666

retaliating against an employee for opposing discriminatory practices or otherwise engaging in protected activity.

<u>**FACTS**</u>

19.    Plaintiff was employed by Defendant as a sales representative in Defendant's Global Mailing Division from in or about August 1988 until December 28, 2005.

20.    At all times material hereto, Plaintiff performed his job in a satisfactory manner.

21.    Indeed, Defendant considered Plaintiff to be a "top performer."

22.    During Plaintiff's employment with Defendant, he was consistently among the top 2-3% of sales performers in the United States and was the top sales representative nationwide for two consecutive years (1995 and 1996).

23.    During Plaintiff's employment, he was one of approximately 19 sales representatives in the United States, who were entitled to participate in the Presidential Pay Plan, which was a compensation plan for a select group of sales representatives, who were consistently deemed top performers.

24.    In or about January 2005, Plaintiff began to experience symptoms of major depression. Among other things, this condition substantially limited Plaintiff's ability to eat, sleep, engage in sexual relations, work, and engage in social interactions.

25.    As a result of his disability, Plaintiff took a disability leave from Defendant from on or about May 3, 2005 through on or about July 6, 2005.

26.    Plaintiff's disability leave was prompted by a recommendation from his physician.

27.    Prior to approving Plaintiff's leave, Defendant required Plaintiff to submit to physical and mental evaluations to confirm his physician's diagnosis of disability.

0440.00111666

4

28.    Plaintiff informed his supervisor, Susan Jaycox (Area Sales Manager – Long Island), that he was suffering from major depression.

29.    Upon returning from leave in or about July 2005, Plaintiff's supervisors and colleagues repeatedly harassed him because of his disability.  For example, they frequently referred to Plaintiff's mental disability leave and commented on the fact that he took medication for his condition.

30.    Plaintiff regularly overheard comments such as "his medication must be kicking in" and "whatever he's on, I want it."

31.    Plaintiff never informed his coworkers or customers that he had taken a leave due to major depression.  Moreover, Plaintiff never told them that he was taking medication for his disability.

32.    Sales representatives around the country with whom Plaintiff interacted commented to him about his so-called "nervous breakdown."

33.    On at least one occasion and shortly after Plaintiff returned from his leave, Leonard Vultaggio, another sales representative, approached Plaintiff and told him that he was the last person he would have expected to have a nervous breakdown because he seemed strong.

34.    Plaintiff had never informed Vultaggio of the reasons for his leave.

35.    Upon information and belief, Defendant informed Plaintiff's coworkers and third parties of his disability.

36.    Following Plaintiff's return from disability leave in or about July 2005, Plaintiff's supervisors began claiming that his personality had changed, that he had become confrontational, disagreeable and aggressive.

37.    On at least one occasion, Plaintiff's supervisor, Jaycox, asked him if he had been

taking his medication.

38.    On or about November 9, 2005, Plaintiff participated in a marketing meeting with other members of Defendant's staff.  During this meeting, Vultaggio asked a question and Plaintiff said to him, "Can you take that offline?"  This was a reference to an earlier comment made at another meeting in which Vultaggio had stated the same to Plaintiff.  The comment was made in jest and Vultaggio continued with his question uninterrupted.

39.    Later during the meeting, both Plaintiff and Vultaggio went to the restroom and had a friendly conversation.

40.    At the end of the meeting, Plaintiff proposed an incentive plan for the service technicians.  Michael Jacobs (District Director – Long Island) told Plaintiff to sit down and shut up and said that such a plan already existed.

41.    Plaintiff was extremely embarrassed and felt demeaned by Jacobs's statements.

42.    At the conclusion of the meeting, Plaintiff jokingly stated that he quit.  Plaintiff had no intention of quitting.  Moreover, it was understood that Plaintiff had no intention of quitting.

43.    Subsequently, Vultaggio approached Plaintiff and told him that after the November 9 marketing meeting, Jacobs approached Vultaggio and tried to get him to testify that Plaintiff had physically threatened him in the men's room.

44.    Upon information and belief, and according to Vultaggio, he told Jacobs that no such thing had occurred and he would not falsely state that it had.

45.    During Plaintiff's employment with Defendant, it was his practice to take files home with him at the end of the day so that he could continue to work.  On or about the evening of November 9, 2005, following the aforementioned marketing meeting, Plaintiff took files with

0440.00111666

6

him as he was leaving work for the day.

46.    On or about the evening of November 9, 2005, Fred Mestrandrea (Division Vice President) and Jacobs followed Plaintiff and accused him of speaking with Defendant's competitor and stealing company documents.

47.    Mestrandrea and Jacobs returned to Mestrandrea's office and had Jaycox and Steve Gerst (Area Sales Manager – Long Island) come into the office.  In addition, they called Ken Petersen (Director, Human Resources), placed him on speakerphone and fired Plaintiff.

48.    Plaintiff immediately told Petersen that he had not quit and that he was not speaking on his cell phone with a competitor.

49.    Mestrandrea demanded Plaintiff's cell phone, which Plaintiff gave him, and immediately verified that Plaintiff had not made any calls to Defendant's competitor.

50.    Thereafter, Plaintiff was told to go home for the remainder of the day while Defendant's human resources department ostensibly conducted an investigation.  At the conclusion of the investigation, Plaintiff was permitted to return to work.

51.    Following the incidents of November 9, Jacobs gave Plaintiff a letter, falsely stating that he had engaged in undisciplined behavior during the November 9 marketing meeting. In addition, Plaintiff was placed on "final" warning, even though he had never been warned previously.

52.    In addition, Plaintiff was given a memorandum, dated November 9, 2005, concerning his alleged "low production" for the year 2005.

53.    Despite Plaintiff's favorable performance throughout his tenure with Defendant, both Plaintiff and Defendant were aware that 2005 would be a difficult one for Plaintiff because his lease renewal base for that year was extremely low.

0440.00111666

54.    Plaintiff's sales quota for 2005 was $1,248,000 and his lease renewal base for that same year was only $500,000.

55.    Upon information and belief, of the two other senior sales representatives, Vultaggio had a 2005 sales quota of $950,000 and a lease renewal base of $900,000 and Leonard Mestrandrea had a 2005 sales quota of $1,050,000 and a lease renewal base of $900,000.

56.    Consequently, Plaintiff's supervisors were well aware that 2005 was going to be a difficult year for him in light of his high sales quota and low renewal base for that year.

57.    In or about December 2005, Plaintiff asked to meet with Petersen to address his intolerable working conditions imposed by the fact of his disability.  A meeting was scheduled for on or about December 16, 2005.

58.    Plaintiff informed Gerst, Jaycox and Jacobs of the scheduled meeting and the reason for it.

59.    On or about December 14, 2005, Plaintiff's supervisors called a meeting during which they informed him that he was suspended for alleged conduct constituting "sexual harassment."

60.    Defendant assigned Brian Rowlands and Casey Bush of its human resources department in New York City to investigate the alleged sexual harassment.  On or about December 15, 2005, Plaintiff met with Rowlands and Bush in New York City.

61.    On or about December 16, 2005, Plaintiff went to meet with Petersen as previously scheduled.  Petersen informed him, however, that in light of the sexual harassment allegations, their meeting would not take place.

62.    Conversations of a sexual nature often took place among many of the sales representatives, both on the sales floor and at off-site parties and events.

0440.00111666

8

63.     At all times material hereto, Plaintiff did not initiate such conversations, despite that they were pervasive throughout Defendant.

64.     For example, in or about November 2005, Nicole Kaiser, a sales representative of Defendant with whom Plaintiff worked and was friendly, became intoxicated at an off-site gathering for Kaiser's birthday, which was attended by several of Defendant's employees. While intoxicated, Kaiser made several obscene comments, including "I'm so horny. I just feel like doing my boyfriend right now in the men's room."

65.     Some time later, while on the sales floor, Kaiser and James Delmonico, a sales representative of Defendant, were discussing an upcoming trip sponsored by Defendant. Kaiser stated that all she wanted to do was get drunk. Plaintiff told Kaiser that she should be careful. When she asked why, Plaintiff replied, "You know how you get when you've been drinking." After Kaiser repeatedly asked Plaintiff how she acted when intoxicated, Plaintiff asked her if she remembered the comments she had made at the prior party.

66.     Kaiser stated that she did not remember the comments and asked what she had said. When Plaintiff repeated her own comments to her, Kaiser responded, "what can I say. That's how I get when I get drunk." The conversation then ended.

67.     Subsequently, Gerst reported this conversation to the human resources department, claiming that Plaintiff had engaged in sexual harassment.

68.     Indeed, after Plaintiff had informed Gerst, Jaycox and Jacobs of his intention to speak with the human resources department, Gerst called Kaiser into his office and said that he had overheard the conversation with Plaintiff and Delmonico and that he would report Plaintiff for alleged sexual harassment.

69.     Upon information and belief, Gerst was aware that discussions of an overtly

sexual nature were common among sales representatives and employees of Defendant.

70.    Upon information and belief, Gerst was well aware that Plaintiff did not engage in such discussions.

71.    Upon information and belief, despite that Gerst was aware that discussions of an overtly sexual nature were common at Defendant, Gerst never reported any employee to the human resources department for having allegedly made sexually inappropriate comments.

72.    After Gerst falsely reported Plaintiff to the human resources department, Plaintiff was placed on leave while the human resources department purportedly conducted an investigation.

73.    As part of its so-called investigation, the human resources department interviewed Delmonico about the conversation with Kaiser.

74.    The questioning of Delmonico occurred by speakerphone.  Upon information and belief, the human resources representatives who conducted the interview were unaware that Gerst was with Delmonico during the questioning.

75.    During the interview, the human resources representatives asked Delmonico whether conversations of a sexual nature were common on the sales floor.  Upon information and belief, Gerst gestured to Delmonico to respond in the negative, even though Delmonico was also aware that such conversations took place regularly without anyone being reprimanded.

76.    Subsequently, and upon information and belief, Delmonico contacted the human resources department to inform it that Gerst had coerced him to lie during the telephone interview.

77.    Plaintiff was terminated from Defendant on or about December 28, 2005.

78.    The reason proffered for Plaintiff's termination was the alleged sexual harassment

of Kaiser.

79.    The reason proffered for Plaintiff's termination was pretextual.

80.    By terminating Plaintiff, Defendant knowingly succeeded in preventing Plaintiff

from speaking with the head of the human resources department about the discrimination to

which he was being subjected.

81.    Following Plaintiff's termination, and upon information and belief, Defendant

falsely told Plaintiff's co-workers, colleagues and potential employers that Plaintiff was

terminated for sexual harassment.

82.    As a result of Defendant's wrongful actions, it was extremely difficult for

Plaintiff to secure employment elsewhere.

## PROCEDURAL REQUIREMENTS

83.    Plaintiff has satisfied all administrative filing requirements under the ADA, prior

to commencing this action.  Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC") on or about April 24, 2006.

84.    The EEOC determined after investigation that, *inter alia*,

> evidence discovered during the [EEOC's] investigation establishes that
> [Defendant] has violated the ADA.  Specifically, [the EEOC] f[oun]d reasonable
> cause to believe that [Defendant] harassed and discriminated against [Plaintiff]
> due to his disability and retaliated against [Plaintiff] due to his engagement in a
> protected activity by creating a hostile working environment in part based on pre-
> textual poor performance warnings and disability related comments.  This
> retaliation, harassment and disparate treatment culminated in [Plaintiff's]
> termination.

85.    Plaintiff received a Notice of Right to Sue letter from the EEOC, "date mailed"

February 4, 2008, and is commencing the instant action within ninety (90) days of his receipt of

same.

86.    Pursuant to section 8-502(c) of the NYCHRL, Plaintiff shall serve a copy of the

0440.00111666

11

complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, within ten days of filing this complaint.

## FIRST CLAIM FOR RELIEF

87.     Plaintiff incorporates by reference all of the preceding paragraphs.

88.     Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the ADA, by engaging in or otherwise permitting a course of unwelcome conduct, comments, discussions, and innuendo, ridiculing and disparaging Plaintiff because of his disability.

89.     Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

90.     Such course of conduct unreasonably interfered with Plaintiff's ability to perform his job.

91.     Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

92.     As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

93.     As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## SECOND CLAIM FOR RELIEF

94.    Plaintiff incorporates by reference all of the preceding paragraphs.

95.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the ADA, by sending him a disciplinary letter setting forth false charges and placing him on final warning, four months after his return from disability leave.

96.    Defendant's actions constituted adverse employment actions and were calculated to justify Plaintiff's ultimate termination on the basis of his disability.

97.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

98.    Defendant's actions were in retaliation for Plaintiff's having taken a leave of absence due to his disability.

99.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

100.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

101.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

0440.00111666

13

## THIRD CLAIM FOR RELIEF

102.    Plaintiff incorporates by reference all of the preceding paragraphs.

103.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the ADA, by falsely stating that Plaintiff had engaged in the sexual harassment of a co-worker, in retaliation for his having announced to Defendant's management that he had scheduled a meeting with the human resources department to discuss the harassment to which he was being subjected.

104.    Defendant's actions constituted adverse employment actions and were in retaliation for having engaged in protected activity and to justify Plaintiff's ultimate termination.

105.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

106.    Defendant further retaliated against Plaintiff for opposing discriminatory practices or otherwise engaging in protected activity by informing his coworkers and third parties both during and after his termination that he had sexually harassed an employee of Defendant.

107.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

108.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

109.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings,

0440.00111666

and other fringe benefits.

## FOURTH CLAIM FOR RELIEF

110.   Plaintiff incorporates by reference all of the preceding paragraphs.

111.   Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the ADA, by terminating him.

112.   Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

113.   As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

114.   As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## FIFTH CLAIM FOR RELIEF

115.   Plaintiff incorporates by reference all of the preceding paragraphs.

116.   Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the ADA, by terminating him in retaliation for having engaged in protected activity.

117.   Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

0440.00111666

118.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

119.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## SIXTH CLAIM FOR RELIEF

120.    Plaintiff incorporates by reference all of the preceding paragraphs.

121.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYSHRL, by engaging in or otherwise permitting a course of unwelcome conduct, comments, discussions, and innuendo, ridiculing and disparaging Plaintiff because of his disability.

122.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

123.    Such course of conduct unreasonably interfered with Plaintiff's ability to perform his job.

124.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

125.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has

0440.00111666

16

suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

### SEVENTH CLAIM FOR RELIEF

126.    Plaintiff incorporates by reference all of the preceding paragraphs.

127.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYSHRL, by sending him a disciplinary letter setting forth false charges and placing him on final warning, four months after his return from disability leave.

128.    Defendant's actions constituted adverse employment actions and were calculated to justify Plaintiff's ultimate termination on the basis of his disability.

129.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

130.    Defendant's actions were in retaliation for Plaintiff's having taken a leave of absence due to his disability.

131.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

132.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

0440.00111666

## EIGHTH CLAIM FOR RELIEF

133.    Plaintiff incorporates by reference all of the preceding paragraphs.

134.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYSHRL, by falsely stating that Plaintiff had engaged in the sexual harassment of a co-worker, in retaliation for his having announced to Defendant's management that he had scheduled a meeting with the human resources department to discuss the harassment to which he was being subjected.

135.    Defendant's actions constituted adverse employment actions and were in retaliation for having engaged in protected activity and to justify Plaintiff's ultimate termination.

136.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

137.    Defendant further retaliated against Plaintiff for opposing discriminatory practices or otherwise engaging in protected activity by informing his coworkers and third parties both during and after his termination that he had sexually harassed an employee of Defendant.

138.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

139.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## NINTH CLAIM FOR RELIEF

140.     Plaintiff incorporates by reference all of the preceding paragraphs.

141.     Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYSHRL, by terminating him.

142.     As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

143.     As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## TENTH CLAIM FOR RELIEF

144.     Plaintiff incorporates by reference all of the preceding paragraphs.

145.     Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYSHRL, by terminating him in retaliation for having engaged in protected activity.

146.     As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

147.     As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has

suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## ELEVENTH CLAIM FOR RELIEF

148.    Plaintiff incorporates by reference all of the preceding paragraphs.

149.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYCHRL, by engaging in or otherwise permitting a course of unwelcome conduct, comments, discussions, and innuendo, ridiculing and disparaging Plaintiff because of his disability.

150.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

151.    Such course of conduct unreasonably interfered with Plaintiff's ability to perform his job.

152.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

153.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

154.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

0440.00111666

## TWELFTH CLAIM FOR RELIEF

155.    Plaintiff incorporates by reference all of the preceding paragraphs.

156.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYCHRL, by sending him a disciplinary letter setting forth false charges and placing him on final warning, four months after his return from disability leave.

157.    Defendant's actions constituted adverse employment actions and were calculated to justify Plaintiff's ultimate termination on the basis of his disability.

158.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

159.    Defendant's actions were in retaliation for Plaintiff's having taken a leave of absence due to his disability.

160.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

161.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

162.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

0440.00111666

## THIRTEENTH CLAIM FOR RELIEF

163.    Plaintiff incorporates by reference all of the preceding paragraphs.

164.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYCHRL, by falsely stating that Plaintiff had engaged in the sexual harassment of a co-worker, in retaliation for his having announced to Defendant's management that he had scheduled a meeting with the human resources department to discuss the harassment to which he was being subjected.

165.    Defendant's actions constituted adverse employment actions and were in retaliation for having engaged in protected activity and to justify Plaintiff's ultimate termination.

166.    Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

167.    Defendant further retaliated against Plaintiff for opposing discriminatory practices or otherwise engaging in protected activity by informing his coworkers and third parties both during and after his termination that he had sexually harassed an employee of Defendant.

168.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

169.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

170.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings,

0440.00111666

and other fringe benefits.

## FOURTEENTH CLAIM FOR RELIEF

171.    Plaintiff incorporates by reference all of the preceding paragraphs.

172.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYCHRL, by terminating him.

173.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

174.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

175.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## FIFTEENTH CLAIM FOR RELIEF

176.    Plaintiff incorporates by reference all of the preceding paragraphs.

177.    Defendant, through its own conduct including that of its agents, managers, supervisors and employees, intentionally discriminated against Plaintiff on account of his disability in violation of the NYCHRL, by terminating him in retaliation for having engaged in protected activity.

178.    Defendant's discriminatory acts were performed with malice, and with callous and reckless indifference to Plaintiff's protected civil rights.

0440.00111666

23

179.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self esteem, loss of career fulfillment, embarrassment, humiliation, and harm to his reputation.

180.    As a proximate result of Defendant's acts of unlawful discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, and other fringe benefits.

## JURY DEMAND

181.    Plaintiff demands a jury on all claims properly triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

(a)    against Defendant, under the First, Second, Third, Fourth , Fifth, Eleventh, Twelfth, Thirteenth, Fourteenth, and  Fifteenth Claims For Relief,

(1) preliminarily and permanently restraining Defendants from engaging in the aforementioned conduct; and

(2) awarding Plaintiff back pay, prejudgment interest, reinstatement, front pay, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendants;

(3) awarding Plaintiff compensatory damages;

(4) awarding Plaintiff punitive damages;

(5) awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

(6) awarding Plaintiff any other relief this Court deems to be just and proper.

(b)    against Defendant, under the Sixth, Seventh, Eighth, Ninth and Tenth Claims For Relief,

(1) preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct; and

(2) awarding Plaintiff all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(3) awarding Plaintiff compensatory damages; and

(4) awarding Plaintiff any other relief this Court deems to be just and proper.

Dated:  New York, New York
       May 1, 2008

Respectfully submitted,

**GANGEMI LAW FIRM, P.C.**

By: _____
     Salvatore G. Gangemi (SG 5604)

82 Wall Street, Suite 300
New York, New York 10005
(212) 425-0630

Attorneys for Plaintiff